143018 Devlin v. Office of Personnel Management Thank you, Your Honor, and may it please the Court. I'm Jason Wilcox. I'm here today on behalf of the petitioner Robert Devlin. I'd like to reserve three minutes for rebuttal. Darlene Devlin, my client's mother, lost her husband of over 40 years, a Department of Defense employee and a former Army officer, in January of 2010. Less than three weeks later, Mrs. Devlin unexpectedly passed away while in the process of completing an application for the Basic Employee Death Benefit. This case turns whether Mrs. Devlin and her estate lost the right to apply for and collect that benefit because she died shortly before mailing the application to OPM. The difficulty that it seems that you face is that 5 CFR 843.302, which you both cite and discuss, says a current or former spouse may file an application for benefit. And if that were all there were, maybe you could argue she was a current or former spouse, but then both the words current spouse and former spouse are also defined in the same CFR to say a living person. Both of them expressly require that. And so I don't know how I can read this regulation other than a living person, who is also a spouse, may file an application for benefit. And she's not a living person, so I don't know how she can file or her estate can file an application for benefit. It's not that I'm not sympathetic to your case. It's that the regulation seems just unequivocally clear, and so I'm not sure how I could possibly go around that. Yeah, I understand that concern, Your Honor, but I think that if you look at the regulation, it doesn't just say a living person. It says a living person who is married to the employee at the time of the employee's death. And so I think that what you need to do, I think that the definition of a living person is was the person alive at the time the employee died. And I think that makes sense, Your Honor, because it's tracking the statutory definition of widow or widower. And if you're not alive at the time the person dies, and if you're not married to them at the time they die, then you're not a widow or widower. But wouldn't that have me read out the may file an application language? I don't, a current or former spouse, i.e. a living person, may file an application for benefit at any time within 30 years after the death of the employee. I don't know that that clause is sort of stuck in the middle in a way that it seems to be hard to reconcile. Well, I think a current or former spouse may file an application personally or through a representative. But my first position is I'm not sure that the agency, when they're speaking about Section 302 here, was really focusing on who can apply for the benefit rather than the time for the benefit. It has to be a living person may file an application through a representative because that's what it defined current and former spouse as. Well, I think it's defined it as a living person at the time that the employee passed away. I think that's what Section 102 is saying. Yes, that's really, because it doesn't say in the definition of current spouse, it doesn't say anything about at the, let's see, current spouse means a living person who is married to an employee or retiree at the time of the employee's death. You think that that definition should be interpreted as a current spouse who is living at the time of death. I see. And so your argument is if I stuck that whole thing in there, she was living at the time of death. That's your argument. Yes, exactly. And if she's alive at the time of death, then maybe she can't personally file for the application because she's passed away. But she can through a representative, which is Mr. Devlin, who is the state-appointed executor for her estate. And so even if you think that Section 302 is really speaking about who can apply for benefits rather than the time for benefits, my client would still meet that definition because he is a personal representative and she meets the definition of current spouse. It does seem to be very strange. There are 30 years within which this filing could be made. So if the person is alive at the time of death, whenever the spouse dies, even if after 29 years and the application hasn't been filed, you believe the correct reading of all of this is that then the estate could file it even 30 years later? So I believe that that is the best reading of that. I think the facts are much stronger here. It was much closer at three weeks. And I think there's various equitable doctrines that the court may be able to deploy if it looks like something such as an executor sat on the right for many years or the surviving spouse sat on the right for 29 years. How in the world could we deploy that? If the regulation expressly says you have up to 30 years to file, how in the world could we come along and deprive someone that files 29 years in, be on some sort of equitable basis? The regulation is clear on its face and would allow the person. I think that there would potentially be equitable basis for doing that. I don't think that that's a question before this quarter that you need to reach it. But I think the larger point is, as you said, that Congress and OPM in implementing what Congress has said has already made the determination that 30 years isn't too long to wait. And that's the curiarity of they have 30 years to exist no matter what. In some way, it's refreshing to hear a federal regulation interpreted on equitable grounds. But it says 30 years. How could a person be stopped after 29 years? Well, I mean, there are equitable doctrines like Latches that they sat on their rights and they do about them. The argument that, let's say that the spouse dies and 20 years goes by and somebody becomes aware of this, it's only a legally appointed representative at that point that could file. And perhaps under state law that controls executiveship and things of that nature, that's where some of these limitations could arise. I think that's possible as well. But I think the larger point is these concerns about someone sitting around and waiting 29 years or 20 years or 15 years are questions about what Congress passed and what the regulations that OPM implemented say. And they're not really peculiar to the circumstances of whether an executor could do it or not. It could be the same thing if the spouse knew about the benefits for 29 years and then decided for whatever reason to file them at the very last minute. I mean, that would also seem peculiar. But whether there is or is not something equitable you can do doesn't turn on. One problem I have with adopting your interpretation, which I thank you because you definitely helped me understand better, is that for better or worse, Congress and OPM decided that a wife would be entitled to these benefits, but further lines of secession would not. These benefits wouldn't flow to children or in the event that the wife predeceases the husband or something like that. This was specific to wanting to provide a benefit to allow for a spouse to be cared for in the event of a husband or wife's death. And your interpretation would create basically children's rights or inheritors' rights. It would sort of turn that notion that Congress wanted to protect only a spouse on its head by saying if the spouse dies, we'll nonetheless extend the benefits to the kids even though the statute doesn't extend the benefits to the kids. So I guess I'm trying to go at which of these two interpretations would make the most sense and reading the statute as a whole with the recognition that neither Congress nor OPM approached it with the idea of protecting children or other descendants other than a spouse. Does that affect which of the two I think there's two responses to that, Your Honor. I think the first is we don't know why Congress said it's only for widows or widowers. I think a good way to look at this provision is to look at it as if it's essentially a life insurance policy. And just as you specified beneficiary for a life insurance policy, Congress actually made the determination that the beneficiary of this life insurance policy would be the spouse. And that way you avoid the kind of intensity issues that arise or the will contest issues of trying to decide who really should get the benefit. Congress just said we'll just make the beneficiary the spouse and that's the way we'll solve this problem. But I think the other point is OPM has the exact same problem as what you're identifying in my interpretation because OPM itself has recognized that if she had dropped the application in the mail that her estate should receive the benefits. And OPM in its regulations has said that if she had elected to receive these payments and installments and then she passed away that the benefits should go to her estate. Actually, let's be clear. They didn't argue that and they don't want that rule but they're stuck with it because of the case that we decided a while back that Bill Bryson wrote and I was on the panel for. They actually argued the opposite of what you just said to us previously but lost and are stuck with the idea that once she puts the application in the mail, she has a due process property right interest in it, which they cite on page 36 of their brief. I think almost begrudgingly that she would then have the right. So they acknowledge it only because we forced it down their throat. But they didn't come to court with the idea initially that this section always covered somebody who put an application in the mail. Okay, but you didn't force down their throat. I'm sorry. That's okay. You didn't say, Your Honor, and you didn't require them to enact 843.302 C2, which says that if she was receiving benefits and installments at the time of her death, her estate gets it. And that's the call that OPM made, even though if it seems to be like it was only for widows and widowers, that wouldn't make any sense. It seems like the benefits should just go away, just like annuity benefits go away as soon as you die. And so I think that that really brings out the curious distinction in this case, which is they seem to be trying to have this argument that it is about the widow or widower, but in truth, they've already determined that it's not about the widow or widower through this regulation and through the begrudging acceptance of the prior decision by this court. So where does this property right accrue? Does it accrue at the time of the death of the employee and he's got a living spouse or a former living spouse, or does it accrue at the time that the envelope goes out? So I believe that under the Supreme Court's decision in Castle Rock and under this court's decision in Cushman, which Judge Moore was just discussing, that it accrues at the moment that the spouse dies. What the statute says is that she is entitled to the benefit once her husband dies. Let me make sure I understand how this all operates. This is in your response to Judge Moore's question about whether the law provides for the children. Now, if Ms. Devlin had a file in time and everything, let's say she had sent in the child, isn't it the case that the government will now provide a lump sum payment to her children? Yes, that is the case. I mean, it would be her children, assuming that's what state law says would happen with the assets for a state. What happens is it gets paid to her estate, and whatever Virginia law says about how those assets should be distributed, whether it be a rule or a test, that is then where the assets go. And so I think that is an important point, that the entitlement arises at the moment in which she dies. And therefore, the liability of OPM. The entitlement arises, but does she acquire a property right at that time? For example, suppose she doesn't file within 30 years after his death. Have these OPM's regulations void because it's deprived her of an accrued property right? I think Cushman stands for the proposition that the application, the time of the filing of the application, creates the property right interest. So that is what Cushman stands for, that's the holding of Cushman, but it's interpreting the Supreme Court's decision in Castle Rock, which said that the way in which we decide if there's a property interest or not. But if you were right, they couldn't deprive her of the property interest 30 years after. If she filed 31 years, this would be void. Well, I think it's a, I mean, she has a property right, but I think it's a contingent property right. She has an entitlement to the benefits. Now, if she doesn't comply with what Congress said you have to do to jump through those hoops, then she doesn't get the benefits. Just like in Cushman, there's a property right in the benefits, but if it turns out that Cushman didn't actually meet the eligibility requirements for the benefit, it doesn't matter that he had a property right because the agency would still be within his discretion to deny it. Or not within his discretion, but would still be entitled to deny it. Speaking about discretion, speaking about discretion now, what standard are we reviewing this case under? What's the difference that we, the standard that we owe in this case? So, to the MSPB, you do not owe any deference because this is a purely legal question, and so you review it de novo. And to OPM, you also do not owe any deference for two reasons. The first being that they didn't raise it until this court, so they waived reliance on Chevron or our deference. And the second being that even if they hadn't waived it. That's what I wanted to hear. I wanted to hear your comment on whether you can actually waive any deference standard that we would apply either under Chevron or our. So, I think you can, Your Honor, and the Sixth Circuit recognized it in its, I think it's Erskine case, that you can waive this type of deference. The agency needs to raise it and bring it up if they want to rely upon it. Just like you can waive all kinds of arguments by not raising them in the court below. You can waive a claim construction argument by not making it below, even though it's a legal question what the claim means. I think the same standard would apply here for OPM choosing below an MSPB not to raise Chevron or our. But I think that, cutting that aside, they still would not be entitled to deference because these, the regulations that they are pointing to just weren't passed with this question in mind and the agency just didn't give it its full consideration, which is what the Supreme Court has said in numerous cases. So, is it your position that this regulation is ambiguous? That the regulation itself is ambiguous? I think my position is that, yes, the regulation isn't perfectly clear on whether the entitlement to the benefit goes away the moment you die. There's certainly nothing in the regulation that explicitly says that. And it's also clear that was not what the agency was trying to make clear when it passed this regulation or promulgated this regulation. If you look at the Federal Register, for example, there's nothing that the agency says about, oh, what we're doing in passing Section 309 is we're making clear that this benefit goes away at death since Congress was silent. All they said is this is a timing rule. Okay. All right, good. Let's hear from the government. Ms. Kirchner. May it please the Court. The issue here is who may apply for the basic employee death benefit. The statute makes no provision for either the payment to or an application by an executor or administrator of the estate of a dead person. This contrasts, for example, with the patent statute at 35 U.S. Code 117, where Congress explicitly provided that the— Let's go back to that statement. If the employee dies, then you have the spouse that's handling some paperwork, and she says, you know, this is just too much. And she calls her son and tells her son, fill all this out for me, sign it for me, and send it in. Would she become eligible at that point? What has to happen is that the application has to be submitted, actually submitted to OPM. So in the hypothetical you gave me, you didn't say anything— Where does it say that in the regulation, actually submitted, that the application— First of all, the statute says that—this is in 5 U.S. Code 8466, paragraph A—that there shall be no payment made unless there is an application for payment of the benefit. Well, it's just talking about an application. It doesn't talk about who made it. Correct. In this case, there was an application. Correct. But also, the regulations also require an application. And that the question really here— Well, that's what I'm asking. I know it requires an application, but you seem to be saying that the regulations specify that it be filed only by one person. And I wonder, why not a personal representative or an authorized agent or an executor? Because the regulations answer that question. The regulations are—the regulations to look at are subpart A and subpart C. Specifically, 843.302 states that a current or former spouse of a deceased retiree, employee, or separated employee may file an application for the benefits personally or through a representative. And then— And in this case, the application was filed through a representative, correct? It was not filed by a representative of a living person. Okay. But no, ma'am, you're—let's go back. There was an application filed by a representative. Yes, but not a representative— Okay, now let's back up and talk about the living person. Now, can't you read the regulation to say that the living—the person must be living at the time of the death of the employee? No, because in both—the same regulation, 843.302 applies to both a current spouse and a former spouse. And as the board stated, both a current spouse and a former spouse are defined as a living person. And if you look at the definition of former spouse, it states— But she was living when he died. That is correct. But if we look at the definition of former spouse, it says a living person who was married for at least nine months to an employee, separated employee, or retired employee, who has 18 months of credible service and whose marriage terminated before the death of the employee. And similarly, a current spouse is defined as a living person who was married to the employee, separated employee, or retiree at the time of the employee's death. Now, in both cases, both former spouse and current spouse are defined as living persons. And then if you look at— Yes. She has to be married 18 months. You could have several former spouses. She'd have been married 18 months, a whole bit. And then they get a divorce. She remarries three times, three different spouses, former spouse times three. And then the employee dies. 20 years have gone by. She files an application, and she is entitled for benefits? Yes. Understand that there is only one amount for the death benefit. And potentially, it could be split between several former spouses and a current spouse. So all three spouses would get the benefit. In this case, Ms. Devlin died within 17 days of the death of the employee. And she's not entitled to the benefit? She didn't file the application. I'm assuming in your hypotheticals, each one of those former spouses files an application. So providing that the former potentially is split among them. Now, in order to split, this is addressed in the statute and the regulations, there would have to be either an election by the employee or a court order that gave the rights to the former spouse. In view of the fact that the government would split the amount among all former spouses if they all applied and they all met the 18-month requirement and everything, doesn't it make more sense that the regulation speaks to that the spouse had to have been alive at the time of the death of the employee? No, no. It's explicit in the regulation that a former spouse is defined as a living person. That's how OPM has defined former spouse and how OPM has defined current spouse. I understand that, but what's the timing? Living when? At the time of the death of the employee? Living at the time the application is filed. And I would point out that the same... And does the regulation permit the filing of an application by a representative? Of a living person. A representative of a living person may file. So it matters not who filed, who filed the application. What matters is whether the person was living. And doesn't the regulation read to the effect current, current. I mean, didn't have to use the word current, could have just said living. Use the word current because it's relating back to the death of the employee. He had to have been alive at the time that the employee died. You also must be alive at the time of filing the application because current spouse... Well, is current sort of transposed up against former? Like it doesn't current actually quite clearly in the regulation go to your marital status, not as opposed to the timing related to the death. Like former doesn't relate to the timing of the death, right? So current is as compared to former. Well, the regulation defines current spouse and former spouse. It doesn't break up the terms. I guess I was understanding Judge Reyna's question to be suggesting to you that the word current had an implication of current at the time of death. And I was quite frankly trying to help you by pointing out to you that current and former are next to each other and current is as compared to former, not necessarily either of which are related to time of death, but as compared to each other. I would agree. I think that's correct. And just to clarify, I don't want to create confusion. Of course, the former spouse has rights under the statute and regulations when they're given by court order or an election, which is also set out in the regulations. Now, so it's our position here that the left a gap and the regulation has answered the question in this case as to who may apply in this type of case. Why does the application matter? On page 36 of your brief, you seem to accept the idea that had she filed an application, her estate would in fact then have been entitled to the benefits. Is that correct? Am I reading your brief right? Under Cushman and everything else, that had she filed an application herself and then died the next day, her estate would have been entitled to the benefits. Provided that all of the requirements are met. She has to be married for a certain amount of time. Right. So you acknowledge that had she filed the application and then died, her estate would recoup the benefits. So what does it, I guess I'm trying to understand, what is the difference between her filing it or her estate filing it under those circumstances? The regulation, first of all, allows only a living person to file. In the example you gave, a living person would have filed the application. And we're not going to penalize the applicant because of whatever length of time it took OPM to process the application or however long any appeal process took. For example, if we had wrongfully denied it and then it went up to the board for review, however long it takes to process the application is not going to deprive the applicant of the right. Given that the regulation allows for almost like a 30-year clawback, right? You can come in up to 30 years after the death of your spouse and seek benefits. Would this, should we rule the way the appellant wants here? Would it open the door to an extraordinarily large number of additional claims because now estates could come in up to 30 years later, long after the death of the spouse, and seek payment? Well, I can't really say as to what number, but certainly there would be additional claims could be filed. One would hope that an executor, I really can't speak to the number of claims. I don't have any information as to the number of claims that would be filed. But... That effect can happen now. A former spouse can realize or read a newspaper article and say, oh gee, 28 years has gone by, let me go file now. She would be entitled to benefits. The 30-year clause is out there one way or the other. That's true. I mean, the 30-year clause is part of the statute and it's part of the regulation. So, if a former spouse meeting all the requirements as to length of marriage... So, Congress intended that all spouses that meet the requirements of the statute should get the benefit up to 30 years. That's potentially true, but when there's a former spouse, there has to be a court order for providing for the benefit or an election by the employee, and that election is filed with OPM. So, OPM would have some information, some notice as to the former spouses, right? So, if they, for example, the current spouse files an application and OPM has information as to a former spouse. Okay, so I understand. So, what you're saying is that the requirement of there be some legal formality as to a personal representative would impede or at least provide some sort of impediment to this flood of applicants that could ensue. I don't know how many applications there would be. I just, I can't really speculate on that. But here, we think there's a very, very narrow question before the court and it is simply who can file the application and that the board correctly answered that question because it pointed out that under 843.302, it can be filed only by a current... Is there anything to which we ought to give deference to the agency here? Opposing counsel suggested that there is some ambiguity in the regulation about whether they have to be living at the time of the application or living at the time of death. Did the agency undertake any sort of formal or other process or other opinion letters? Is there anything out there to which we would give deference if the agency was owed deference on interpretation of its own right? The, at the time that the agency issued its regulations pursuant to its rulemaking authority, it stated in the preamble that it was issuing regulations to govern the application as well as entitlement to these sorts of benefits and that simple sentence... But that doesn't answer the question because if the regulation is itself ambiguous as to whether the agency intended for a living spouse at the time of death or a living spouse at the time of application to be able to pursue benefits, that sentence doesn't actually help clarify that point in any way. So I'm wondering, is there anything else that ought we to give deference to the agency's litigation-oriented position in this case? Well, first of all, I respectfully disagree. The regulation is clear. For former spouse, it states... Okay, yes, but if we don't agree with you, I'm trying to get you to focus on deference. I understand you think the regulation is clear, but if we don't agree that it's clear, is there anything to which we need to give deference? Certainly, the Supreme Court has pointed out that where the agency has rulemaking authority and goes forward with regulations and then implements those regulations, it is the agency that should be looked to, not the courts, who should come up with the rule of decision in the case. And so certainly under the Supreme Court's precedence that we have cited in our brief, deference is due to the agency in this case and the agency's interpretation, which is stated in the regulation. Even taken in a litigation-oriented setting like this one? Excuse me? Even taken in a litigation-oriented setting like this one? Certainly, we would like that here. We have only the litigation posture of the agency. Is that what ought to get deference also? Certainly, the decisions of the court, of this court and of the Supreme Court, allow deference to the agency's position taken in litigation. And it is the agency that is entrusted with the obligation of interpreting the statute and its own regulations. And that is the deserving of deference, as we've stated. Okay. Thank you, Ms. Kirshen. Can you start with Mike's last question? If it's ambiguous, I think she's right. Agencies can get deference even in a litigation-oriented posture. Of course, deference is less when taken in a litigation-oriented posture as opposed to in some sort of formal process. So, if the reg is ambiguous, why wouldn't the agency get deference and we would give it their interpretation? Well, I think that it's true that there's no per se rule that agencies don't get deference in a litigation context. However, cases like our and like Christopher from the Supreme Court also make it clear that we need to be careful about accepting agencies' litigating positions. Christopher, for example, didn't accept the have been changing over time, which is also what's been happening here. Below, first, the agency was saying to the MSPB, the statute's clear. You don't even need to look to the regulations. We now have the agency saying, well, the statute's ambiguous. The agency... But that's not what they meant by changing positions. They meant in those cases changing positions on the exact position that they were taking vis-à-vis the interpretation of the beneficiaries of the spouse are entitled to the benefits and now switched in the context of litigation. It's my understanding that those cases speak to that circumstance when they talk about inconsistent positions. Well, I think that's one example, and I don't think that's the only indicia you look for, for is this an agency litigating position rather than the agency's considered view. I think, you know, you look at has there been anything that suggests that the agency has thought hard about this issue before it got into a case and started litigating and defended the stance that its employees took in denying benefits here, and there's no evidence of that here. And I'd also just like to say that in our and in Christopher and in most of this court's cases, when they're deferring to agency positions in litigation, it's amicus brief filed by the agency. It's not the agency's brief as a party in the case. I'm not aware of a decision by this court or by the Supreme Court deferring to an agency litigating position offered by the agency. I'd also like to address your concern, Judge Moore, about estates and whether there'd be all kinds of estates coming in, you know, 25 years, 30 years later. I also don't know the number that would come in, but I think state law would largely handle preventing people coming in 25 or 30 years later because it's very unusual for an estate still be open and being administered by the executor 15, 20, 25 years down the line. Normally, administration of the estate is finds out about a favorable ruling in this case. They still won't be able to come into this court because they'll no longer be an executor under state law. And the final point I'd like to make in my remaining 15 seconds is just Congress knew how to make clear when it wanted these benefits to go away, and it did that through the annuity statutes, for example. And so I think it makes sense here where Congress didn't do that to defer to the modern default rule that these benefits should survive death. Thank you. Okay. Thank you, Mr. Wilcox and Ms. Persaud. The case is taken under submission. That concludes the argued cases for this morning. All rise. The honorable court is adjourned until tomorrow morning at 10 o'clock.